UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THOMAS TURNER and
MICHELLE TURNER,

                          Plaintiffs,

                                                    **DECISION AND ORDER**
                                                         11-CV-211A

          v.


THE VILLAGE OF LAKEWOOD, NEW YORK,
THE BOARD OF TRUSTEES OF THE
  VILLAGE OF LAKEWOOD, NEW YORK,
GEOFFREY BOND, and
SALLY T. BOOTEY,

                          Defendants.

_____

## I.    INTRODUCTION

        Pending before the Court are two separate motions to dismiss the

complaint of plaintiffs Thomas and Michelle Turner under Rules 12(b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").[1]  One motion to

dismiss (Dkt. No. 8) comes from defendants Geoffrey Bond and Sally Bootey.

Bond and Bootey argue that the complaint fails to state any federal claim against

them, that the Court lacks supplemental jurisdiction over the state claims, and

that plaintiffs are seeking to disturb state court decisions that resolved the issues

_____

        [1] Plaintiffs also have a motion pending to strike defendants' motions "for
relying on inadmissible evidence" (Dkt. No. 24).  The Court denies this motion as
moot given the legal analysis set forth below.

that they present here.  The other motion to dismiss (Dkt. No. 11) comes from the

defendants the Village of Lakewood and its Board of Trustees (the "Village"

collectively).  The Village argues that plaintiffs have failed to state an equal

protection claim, to establish a property interest that would support a due process

claim, to show that judicial remedies were unavailable at the state level, to meet

the requirements for a First Amendment claim, and to show that the complaint

survives res judicata preclusion.  Plaintiffs counter both motions by explaining

why they pled their clams adequately under 42 U.S.C. § 1983 and by asserting

that the relief that they seek would be consistent with the decisions issued in

state court.

The Court has deemed the motions submitted on papers pursuant to FRCP

78(b).  For the reasons below, the Court grants both motions and dismisses the

complaint with prejudice except as explained below.

## II.   BACKGROUND

### A.   *The Parties' Properties Generally*

This case concerns an ongoing dispute between plaintiffs, Bond and

Bootey, and the Village as plaintiffs attempt to develop property that they own

along Chautauqua Lake.  Plaintiffs' dispute concerns two properties in particular.

One property is a parcel designated as 33 East Lake Street, a parcel that they

acquired in 2004 and that borders Chautauqua Lake.  East Lake Street in the

Village of Lakewood is a street that runs about three blocks from Lakeview

Avenue before tailing off into the driveway of Bond's residence at 20 East Lake Street.  Plaintiffs sought to build a two-story shed with associated landscaping improvements at 33 East Lake Street.  The other property is a parcel designated as 46 Ohio Avenue, a parcel that plaintiffs acquired in 2007 and that also borders Chautauqua Lake.  Ohio Avenue is what is known as a "paper street": a street noted on property maps that does not exist physically.  Because Ohio Avenue theoretically ends at their parcel, plaintiffs have sought to establish easement rights along that street that would allow them to access the parcel with a motor vehicle and to build a single-family residence there.  Alternatively, plaintiffs have sought to establish easement rights that would give them access to 46 Ohio Avenue from the end of East Lake Street.  East Lake Street ends approximately 100 feet from 46 Ohio Avenue, and access from that street to plaintiffs' parcel would require an easement that runs across a narrow parcel that Bond owns that lies between plaintiff's parcel and East Lake Street.

Bond, Bootey, and the Village have resisted plaintiffs' development projects in several ways.  The Village refused to authorize the project at 33 East Lake Street and refused to issue the necessary zoning variances because it claimed that the project would encroach on a public easement that is part of that street. Although East Lake Street physically is only 15–20 feet wide, maps dating back to 1875 show that it has a total width of 50 feet including a public right-of-way. The Village resisted the project at 33 East Lake Street also because it considered

3

the parcel a corner lot subject to additional set-off restrictions under Village Code § 25-22.  The Village refused to acknowledge easement rights for plaintiffs along Ohio Avenue because the history of the properties along that street did not give rise to any easements.  In response to the Village's opposition, plaintiffs built their shed at 33 East Lake Street anyway and commenced litigation in state court regarding both 33 East Lake Street and 46 Ohio Avenue.

**B.    *Prior State Litigation***

In the first state action,[2] plaintiffs used N.Y. CPLR Article 78 to challenge the Village's determination that 33 East Lake Street was subject to additional set-off restrictions because it was a corner lot.  In a decision issued on April 25, 2008, the New York State Supreme Court, Appellate Division, affirmed the trial court, sided with plaintiffs, and found "that the record establishes that [plaintiffs]' property has only one street side and thus does not constitute a corner lot." *Turner v. Andersen*, 860 N.Y.S.2d 758, 759 (App. Div. 2008).  The Appellate Division then concluded that the Village Zoning Board's "application of the setback requirements in section 25-22 to [plaintiffs]' property was unreasonable and irrational."  *Id.* (citation omitted).

In the second state action, plaintiffs again commenced a proceeding under CPLR Article 78 and challenged the Village's denial of easement rights and

---

[2] The Court will refer to the state litigation in the chronological order of the final appellate decisions, regardless of when the actions may have been filed at the trial level.

vehicular access along Ohio Avenue.  In a decision issued on November 20,

2009, the Appellate Division affirmed the trial court and ruled against plaintiffs.

The Appellate Division held that "there is no indication in the record that the

property in question was subdivided into lots by the original grantor in accordance

with the subdivision map, and thus [plaintiffs] have failed to establish by clear and

convincing evidence the original grantor's intent to create a 'paper street'

easement over Ohio Avenue."  *Turner v. Anderson*, 888 N.Y.S.2d 701, 703 (App.

Div. 2009) (citation omitted).

In the third state action, Bond and Bootey commenced a declaratory

judgment action against plaintiffs over the shed that they built at 33 East Lake

Street.[3]  Specifically, Bond and Bootey sought to establish that they had a public

right-of-way for the entire 50-foot width of East Lake Street, and that plaintiffs'

shed encroached on their easement rights.  Bond and Bootey sought this

determination because their properties lie at the tail end of East Lake Street and

require passage on that street, past plaintiffs' property, for access.  In a decision

issued on November 12, 2010, the Appellate Division modified the trial court's

determination and sided with Bond and Bootey.  The Appellate Division held that

plaintiffs' "construction of a retaining wall and a shed along the northern boundary

of the parcel owned by Bootey impedes the rights of Bond and Bootey to light, air,

---

[3] The action commenced shortly before construction began but appears to
have ended after construction concluded.

and access to the entire 50-foot right-of-way and impedes the ability of Bootey to access Lake Street from her property.  Thus, we remit the matter to Supreme Court for a determination of the appropriate equitable or legal relief to which [Bond and Bootey] are entitled based on the impediment of their rights." *Bond v. Turner*, 911 N.Y.S.2d 557, 559–60 (App. Div. 2010) (citation omitted).

C.    *Federal Litigation*

After the Appellate Division ruled in the three state actions, plaintiffs commenced this action by filing a complaint on March 11, 2011.  The complaint contains nine claims:

1.    In the first claim, plaintiffs accuse the Village of differential treatment in violation of the Fourteenth Amendment. Specifically, plaintiffs allege that the Village resisted plaintiffs' efforts to build a shed within the 50-foot width of East Lake Street while allowing other property owners to take comparable actions.

2.    In the second claim, a state law claim, plaintiffs ask the Court to recognize that they have easement rights across Bond's Ohio Avenue parcel, giving them access to 46 Ohio Avenue from the end of East Lake Street.

3.    In the third claim, plaintiffs make an as-applied constitutional challenge to Village Code § 25-17.  Village Code § 25-17

6

prohibits the construction of buildings on lots that rely on private rights-of-way for access to public streets, when those rights-of-way are less than 50 feet in width.

4.     In the fourth claim, plaintiffs accuse defendants of conspiring to make sure that their proposed projects at 33 East Lake Street and 46 Ohio Street failed, in retaliation for exercising their First Amendment right to redress their grievances against the Village through the litigation in state court.

5.     In the fifth claim, a state law claim, plaintiffs accuse the Village of sewer trespass at 46 Ohio Avenue by channeling street runoff on and under the parcel on its way to Chautauqua Lake. Plaintiffs seek a declaratory judgment that the sewer runoff and conduits are a trespass and private nuisance that should be removed.

6.     In the sixth claim, a state law claim, plaintiffs seek an injunction ordering the removal of a 1200 square-foot garage that Bond has behind his residence at 20 East Lake Street. Plaintiffs contend that the garage, which Bond built as a replacement for a smaller garage, infringes on rights that they have to light, air, and views on an adjacent parcel that they own along Ohio Avenue.

7.     In the seventh claim, a state law claim, plaintiffs again request an injunction ordering the removal of Bond's garage because it violates local zoning laws.

8.     In the eighth claim, a state law claim, plaintiffs seek an injunction directing the removal of a 177 square-foot extension that Bond added to his house at 20 East Lake Street because it violates local zoning laws.

9.     In the ninth claim, a state law claim, plaintiffs seek an injunction ordering Bond to remove a break wall and boat ramp that he installed at the shore of Chautauqua Lake. Plaintiffs claim that the ramp creates an unreasonable risk of personal injury and prevents plaintiffs from accessing their parcel at 46 Ohio Avenue from the east except by boat.

Defendants filed their respective motions to dismiss in response to the complaint.  Bond and Bootey point out that plaintiffs have alleged no federal claims against them and that the state claims are not sufficiently related to justify an exercise of supplemental jurisdiction.  Bond and Bootey also emphasize that the three state court decisions resolved the width of East Lake Street and the absence of easement rights along Ohio Avenue.  According to them, the relief that plaintiffs seek directly or indirectly requires revisiting the rulings from those three decisions.  The Village puts more weight in its motion on the legal

insufficiency of plaintiffs' claims.  While arguing briefly that res judicata bars

plaintiff's action, the Village reviews each of plaintiffs' nine claims and details how

each one fails to set forth a claim upon which the Court can grant relief.  Plaintiffs

counter both motions by detailing how the Village has treated them differently by

failing to enforce the 50-foot width of East Lake Street against any neighbors who

have structures encroaching on the public right-of-way.  Plaintiffs also explain

why they consider Village Code § 25-17 arbitrary and irrational and how

defendants have retaliated against them.  Finally, plaintiffs assert that the rights

that they seek to enforce do not require infringing on the state court decisions and

that, in any event, defendants have failed to specify what issues from the state

litigation reappear here.

## III.    DISCUSSION

### A.    *FRCP 12(b)(1) and 12(b)(6) Generally*

Since defendants' motions to dismiss touch on both FRCP 12(b)(6) and

12(b)(1), a brief review of each applicable standard is in order.

"A pleading that states a claim for relief must contain . . . a short and plain

statement of the claim showing that the pleader is entitled to relief."  FRCP

8(a)(2).  "'A short and plain statement of the claim' does not mean 'a short and

plain statement of the eventual jury charge for that claim' or 'a short and plain

recitation of the legal elements for that claim.'  FRCP 8(a)(2) requires a plaintiff

to state, in concise but plausible fashion, what he currently thinks a defendant

actually did to him, subject to revision during later discovery." *Beswick v. Sun Pharm. Indus., Ltd.*, No. 10–CV–357, 2011 WL 1585740, at *5 (W.D.N.Y. Mar. 4, 2011) (Arcara, *J.*).  Courts assess FRCP 12(b)(6) motions by "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted).

The standard under FRCP 12(b)(1) is straightforward.  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).  "[W]e must accept as true all material factual allegations in the complaint, but we are not to draw inferences from the complaint favorable to plaintiffs.  We may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but we may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citations omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113 (citation omitted).

### B.    *Application of the* Rooker-Feldman *Doctrine*

In arguing to the pending motions to dismiss, the parties have cited to numerous cases that apply Fourteenth Amendment and First Amendment

principles to scenarios involving disputes with municipalities or disputes involving property.  Unlike those cases, however, this case comes before this Court after the parties litigated against each other in state court three times.  As noted above, the three state court decisions resolved definitively that 33 East Lake Street is not a corner lot, that East Lake Street is 50 feet wide, and that plaintiffs have no easement rights along Ohio Avenue.  Despite those determinations, the first and third claims implicitly ask for a declaration that East Lake Street is less than 50 feet wide.  The Court therefore will review its jurisdiction under the *Rooker-Feldman*[4] doctrine because plaintiffs' first and third claims resemble an appeal of the decisions reached in state court.

The *Rooker-Feldman* doctrine prohibits "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.  Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action

---

[4] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

is necessarily the kind of challenge to the state judgment that only the Supreme

Court can hear." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 88 (2d

Cir. 2005).

Here, plaintiffs' first and third claims come too close to an appeal of the

state court decisions to survive dismissal.  The state court decisions held that

East Lake Street is 50 feet wide when adding the physical road plus the public

right-of-way.  Before those decisions, plaintiffs might have been able to allege

that the Village denied them permission to encroach on the 50-foot width that it

granted to other East Lake Street residents.  After the state court decisions,

however, neither this Court nor the Village can grant plaintiffs permission to

encroach on the 50-foot width of East Lake Street so long as the state court

decisions stand.  The only way to grant the relief that plaintiffs seek would be to

nullify the state court decisions and to start over with a determination of how wide

East Lake Street is.  *Cf. Raydos v. Cohen & Slamowitz, LLP*, No. 08-CV-4, 2009

WL 2929166, at *2 (W.D.N.Y. Sept. 9, 2009) (Arcara, *C.J.*) (holding, in a fair debt

collection case, that plaintiff was challenging a state court money judgment on

which defendants collected where "[d]efendants would have had no right to

collect that money without the State Judgment.  The State Judgment, therefore,

caused at least part of any actual damages that plaintiff could have claimed in

this case.").  The *Rooker-Feldman* doctrine prohibits this Court from making any

such determination.  Accordingly, the Court grants defendants' motions with respect to the first and third claims in the complaint.

**C.    *Res Judicata***

Even if the *Rooker-Feldman* doctrine did not apply and the Court had jurisdiction to review the first and third claims in plaintiffs' complaint, principles of res judicata would bar those claims along with the second claim.  "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citation omitted).  "To prove the affirmative defense a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted).

Here, plaintiffs have not presented any allegations in their first three claims that they did not or could not raise in the state litigation.  The state court decisions resolved definitively that East Lake Street is 50 feet wide and that plaintiffs have no easement rights along Ohio Avenue.  Since plaintiffs litigated over Ohio Avenue to try to win access to 46 Ohio Avenue, they easily could have added an argument about access over Bond's Ohio Avenue parcel as an alternative means

of access.  *Cf. Niagara Mohawk Power Corp. v. F.E.R.C.*, 162 F. Supp. 2d 107,

143 (N.D.N.Y. 2001) (dismissing plaintiff's claim about statutory pre-emption

where plaintiff could have raised it in prior litigation involving the same parties).

Additionally, plaintiffs cannot claim now that the Village should have let them build

their shed within the 50-foot width of East Lake Street without revisiting how wide

that street is and what their rights are to encroach on it.  *Cf. Jemzura v. N.Y.S.*

*Dep't of Motor Vehicles*, No. 97–CV–1030, 1998 WL 460256, at *5 (N.D.N.Y.

Aug. 3, 1998) (dismissing Fourteenth Amendment claims about denial of

electrical service to their property because plaintiffs "have had several

opportunities to litigate this claim in federal court, and they are barred by the

doctrine of res judicata from relitigating this claim once again simply because they

did not receive a favorable decision in a prior proceeding").  Going forward, the

only issue that might remain for future litigation regarding the public right-of-way

on East Lake Street—assuming that someone would have standing to raise

it—would be whether the Village enforces the state court decisions equally in the

event of complaints that plaintiffs' neighbors are encroaching on the 50-foot

width.  Under these circumstances, the Court grants defendants' motions as to

the first three claims in the complaint.

### D.    *Plaintiffs' Fourth Claim for First Amendment Retaliation*

The Court next will review the legal sufficiency of the fourth claim in the

complaint, in which plaintiffs accuse all defendants of retaliating against them for

14

exercising their First Amendment right to petition the Village about their proposed construction projects. "To properly plead such a claim, [plaintiffs] initially had to show that their conduct was protected by the first amendment and, next, that such conduct prompted the [defendants'] retaliatory action." *Brady v. Town of Colchester*, 863 F.2d 205, 217 (2d Cir. 1988) (citation omitted). "The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194–95 (2d Cir. 1994) (citations omitted). "The Second Circuit has held that the right to petition the government for the redress of grievances is generally subjected to the same constitutional analysis as the right to free speech. As such, in order to prevail on a right to petition claim, [plaintiffs] must show that [their] activity dealt with a matter of public concern. In order to make this inquiry, the Court must look at the substance of the complaints themselves to determine whether they address a matter of public concern." *Gusler v. City of Long Beach*, No. CV 10–2077, 2011 WL 4625991, at *22 (E.D.N.Y. Aug. 15, 2011) (internal quotation marks and citations omitted).

Here, plaintiffs' fourth claim simply restates the history of their dispute with the Village over the shed at 33 East Lake Street and the need for vehicular access to 46 Ohio Avenue. Plaintiffs begin the fourth claim by reciting that they applied for building and zoning permits to build their shed—planned originally as a carriage house—at 33 East Lake Street, within the 50-foot width of that street.

15

The application prompted the Village to check whether 33 East Lake Street should be considered a corner lot.  The Village said yes, plaintiffs said no, and plaintiffs ultimately prevailed in their CPLR Article 78 proceeding.  At this point in the recited history, plaintiffs have not pled any information suggesting that the Village retaliated against them simply by taking a position on the corner-lot issue.

Plaintiffs then turn to the dispute over easement rights along Ohio Avenue as proof of retaliation because "[u]nfortunately, these concessions [*i.e.*, losing on the corner-lot issue] have had no discernible effect on the Defendants in this litigation."  (Dkt. No. 1 ¶ 194.)  Through this assertion, plaintiffs seem to assert that winning the corner-lot issue meant that any other opposition by the Village to plaintiffs' projects would constitute retaliation for having won the corner-lot issue.  Plaintiffs proceed to describe the issue about vehicular access to 46 Ohio Avenue, even though the Village prevailed on that issue in state court.  Plaintiffs also repeat the issue about the width of East Lake Street, claiming the existence of a "scheme amongst the Defendants [that] relied upon the assertion of a public street being 50 feet in width, so that Defendants Bond and Bootey could assert, by reason of their abutting landowner status, private rights of light, air and access to the entire 50 foot width, and thereby seek removal of the Turner storage building."  (*Id.* ¶ 254.)  Plaintiffs conclude the fourth claim by elaborating on the alleged conspiracy against them and stating that

Nevertheless, various Defendant Village officials, acting in concert with Defendant Bond and perhaps Defendant Bootey, long ago decided that Plaintiffs could do absolutely nothing with their 46 Ohio Avenue parcel and southernmost 50 feet of their 33 E. Lake Street premises except pay real property taxes on them.  This has triggered retaliatory legislation in the form of Zoning Law amendments that have substantially diminished the value of Plaintiffs' real property commonly known as 46 Ohio Avenue.  The indicia of this retaliation is the opaque appearance of a proposal to repeal Village Code §25-26, in sharp contrast to the transparent (and legally required) process whereby every other Code revision was the subject of written proposal and public comment and review.  The indicia also include minute-censoring, and remarks made by powerful Village officials expressing hostility toward Plaintiffs personally.  Defendants have also deprived Plaintiffs of their rights under the First and Fourteenth Amendments, including the right to be free from retaliation for exercise of First Amendment rights, and including the right of substantive due process, relative to Plaintiffs' 33 E. Lake Street premises.  As to this branch of the claim, Defendants' wrongdoing consists of having acted in concert to misrepresent the existence of an official map and to misrepresent the scope of what was authorized by the building permit Defendant Village issued to Plaintiffs. Furthermore, if Defendants achieve their objective of forcing removal of Plaintiffs' storage building, such would constitute a deprivation of property (i.e., the physical structure erected pursuant to an express building permit) without substantive due process.

(*Id.* ¶¶ 261–62.)

    To the extent that plaintiffs' fourth claim rests on substantive issues addressed by the state-court litigation, it cannot go forward for two reasons.  First, plaintiffs have not pled any matter of public concern; they only have pled their attempts to build on their private property.  Second, plaintiffs have not pled any information or cited to any authority suggesting that the Village was not allowed to take a position on the discrete issues that plaintiffs presented.  The Village took a

position on whether 33 East Lake Street was a corner lot.  The state court disagreed with the position that the Village took, but the disagreement by itself did not expose any retaliatory animus.  The Village took a position on easement rights along Ohio Avenue and the state court endorsed it.  The state court also endorsed the Village's position on the width of East Lake Street.  To suggest retaliation from merely taking positions on those issues comes too close to suggesting that the state court had the same animus because it took the same positions.  The presence of the state court endorsements of the Village's positions on most of the issues that plaintiffs presented distinguishes this case from cases in which the parties disagreed about the motive behind actions that had not undergone prior judicial review.  *See, e.g., Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 92 (2d Cir. 2002) (permitting plaintiff to file an amended complaint asserting a claim of retaliation in revoking a previously issued building permit).

Nonetheless, the fourth claim does contain two allegations that plaintiffs should be allowed to explain further if they can re-plead them apart from any issue resolved in state court.  Plaintiffs have alleged that the Village at one point purchased an advertisement in a local newspaper criticizing them for pushing their development projects.  Construing the complaint liberally, the Court cannot rule out yet that the Village took this action in the hope of silencing plaintiffs or at least marking them for public scorn for taking the actions that they took.

18

Additionally, plaintiffs have alleged that the Village made an amendment to Village Code § 25-26 that, in essence, targeted them personally.  Plaintiffs should have a chance to re-plead this claim to explain how it relates to First Amendment retaliation or some other civil rights violation.  Accordingly, the Court dismisses the fourth claim without prejudice to re-plead as explained above.  The Court takes no position at this time as to whether an amended complaint consisting of these two allegations would survive dispositive motion practice.

### E.   *Supplemental Jurisdiction Over the Fifth Through Ninth Claims*

Finally, the Court will examine whether it should exercise supplemental jurisdiction over the fifth through ninth claims in plaintiffs' complaint.  This Court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction [or] the district court has dismissed all claims over which it has original jurisdiction . . . ."  28 U.S.C. § 1367(c)(2, 3); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.  Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims . . . .") (citations omitted).  In fact, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as

well." *Id.* (citations omitted); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d

Cir. 1998) ("In general, where the federal claims are dismissed before trial, the

state claims should be dismissed as well.") (citations omitted).  Here, the Court

has dismissed all of the federal claims in plaintiffs' complaint, granting leave to re-

plead one claim focused narrowly on potential retaliatory conduct.  In contrast,

the fifth through ninth claims in plaintiffs' complaint ask for removal of sewer lines,

garages, house additions, and boat ramps based on state-law theories of

trespass and nuisance.  These claims have nothing to do with First Amendment

retaliation, and plaintiffs are capable of using the state court system to pursue

their trespass and nuisance allegations.  Accordingly, the Court declines to

exercise supplemental jurisdiction over the fifth through ninth claims in the

complaint and will allow plaintiffs to pursue those claims in state court.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court grants defendants' motions to dismiss (Dkt. Nos. 8, 11).  Of the nine claims in the complaint, Claims 1 through 3 and 5 through 9 are dismissed with prejudice.  Claim 4 is dismissed with prejudice except for the allegations concerning the purchase of advertising and the amendment of Village Code § 25-26.  Plaintiffs have leave to file and serve an amended complaint concerning those allegations within 30 days.

The Court denies plaintiffs' motion to strike (Dkt. No. 24) as moot.

SO ORDERED.

_s/ Richard J. Arcara_

HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: October 14, 2011